IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: ASBESTOS PRODUCTS LIABILITY LITIGATION (No.VI) | : : | MDL 875 |
| _____ | : | |
| This Document Relates To: | : : | |
| GEORGE DONALD ELLIS | : : | EDPA CIVIL NO.  10-83254 |
| v. | : : | |
| 3M COMPANY, et al. | : | |
| | | |
| SIDNEY WILLIAM MAUNEY | : : | EDPA CIVIL NO.  10-83255 |
| v. | : : | |
| AO SMITH CORP, et al. | : | |

**<u>MEMORANDUM</u>**

ELIZABETH T. HEY
UNITED STATES MAGISTRATE JUDGE                                                       December 9, 2011

Plaintiffs move to compel "relevant" defendants to contribute to the costs of obtaining discovery from non party Duke Energy, Inc. ("Duke").  See <u>Ellis</u> Doc. 147; <u>Mauney</u> Doc. 117.  This motion follows my earlier Memorandum and Order directing plaintiffs to reimburse Duke for certain of its costs in making the production in response to plaintiffs' subpoenas.  See <u>Ellis</u> Docs. 122 & 123; <u>Mauney</u> Docs. 93 & 94.  In their motion, plaintiffs ask that defendants be ordered to share in the amount plaintiffs paid to Duke in compliance with my order, and to share in plaintiffs' anticipated costs to scan the

Duke documents. Various defendants have filed responses opposing plaintiffs' motion.[1]

One defendant (United Conveyor Corp.) has filed a related motion seeking leave to serve supplemental discovery on plaintiffs directed to the details of the Duke documents they selected. See Ellis Doc. 170; Mauney Doc. 138. I will grant in part and deny in part plaintiffs' motion, and deny United Conveyor's motion.

**DISCUSSION**

In directing plaintiffs to reimburse Duke, I rejected as not yet ripe plaintiffs' request to order defendants to share in the costs of the Duke production, but left open the possibility of cost sharing, stating that "defendants who seek and receive documents from a non party should bear or at least share in the cost of that production." I also directed

---

[1]Response document numbers:

| | Ellis | Mauney |
|---|---|---|
| Aurora Pump, Buffalo Pumps & Crane. Co. | 156 | 123 |
| CBS Corp. | 154 | 122 |
| Siemens Industry, Inc. | 155 | |
| Crane Co. | 157 | 124 |
| Fluor Enter., Inc., Daniel Int'l Corp., Fisher Controls | 160 | 126 |
| Cleaver Brooks, Inc. | | 128 |
| ITT Corp. | 161 | 130 |
| Goulds Pumps, Inc. | 162 | 129 |
| IMO Industries, Inc. | | 127 |
| Gardner Denver, Inc. | | 131 |
| Viking Pump, Inc. | 163 | 132 |
| Ingersoll-Rand Co., Industrial Holdings Corp, Trane USA, Inc., Velan Valve Corp. | 164-66 | 133-36 |
| United Conveyor Corp. | 169 | 137 |
| Flowserve US, Inc. (as successor to Edward Valves, Inc. and Nordstrom Valves, Inc. | | 139 |

Duke to provide an accounting "respecting time and costs associated with responding to defense requests or subpoenas for documents," and directed the parties to attempt to reach agreement on "a method to share the costs of such production, including, if appropriate, reimbursement to plaintiffs for amounts representing efforts that did not have to be undertaken in view of the production to plaintiffs." Counsel for Duke provided its report to all counsel in response to my order on October 13, 2011, and it is attached to plaintiffs' motion as part of Exhibit 1. Duke details its production, which took place in three phases which will be detailed further below. In summary, Duke states that it is unable to identify any costs related solely to producing documents to defendants.

### 1. Phase I

Duke states that its production was initiated in response to the subpoenas issued by the Wallace & Graham firm on behalf of plaintiffs, and that Duke and plaintiffs initially agreed that Duke would produce certain documents. One defense firm (Haynesworth Sinkler Boyd) then served a subpoena identical to plaintiffs', and Duke agreed to make available to all defendants the documents it produced to plaintiffs. This production involved a review of 564 boxes from February 25 to May 25, 2011, which the parties refer to as Phase I of the Duke production.[2] These documents consisted primarily of invoices involving defendants' products. Certain defense firms were present for the

---

[2] In my order, I directed plaintiffs to reimburse Duke $18,000 in connection with the production in Phase I.

3

review for various numbers of days. Plaintiffs offered to provide each defendant a copy of the documents they scanned in Phase I if that defendant shared in the cost. Attached as Exhibit 2 to plaintiffs' motion are the emails of four defense firms, one of which (Nelson Mullins) requested a set of the documents, and the other three (Bennett Guthrie, Womble Carlyle, and Gallivan White) which expressed interest but asked about cost before confirming. Plaintiffs' motion does not state whether they did in fact provide copies of the documents to these firms, nor does it contain any itemization of costs.

     Duke acknowledges that its Phase I production took place in response to plaintiffs' subpoena and in response to Haynesworth Sinkler Boyd's subpoena, and also states that Duke would have made the documents available to all counsel regardless of who served the subpoena. In an affidavit attached to the response submitted by the Haynesworth Sinkler firm, the attorney who issued the subpoena explains that the subpoena was issued to ensure that his clients would have access to the same documents that Plaintiff had access to, and that when Duke objected, he did not move to compel. In other words, the defense would not have issued the subpoena had plaintiff not issued one.

     As noted, I directed plaintiffs to reimburse Duke $18,000 in connection with the Phase I production. Because no defendants sought a third-party production from Duke other than the single subpoena which was itself prompted by plaintiffs' subpoena, I conclude that the plaintiffs' must bear the primary burden for the costs the production generated. However, if a defendant actually requested and received a set of Phase I

documents from plaintiffs, such defendant should share in plaintiffs' costs. Plaintiffs' motion does not make clear whether they actually provided sets of the production to any of the defendants. If they did, such defendants shall share pro rata in one-half of plaintiffs' costs, or $9,000. For example, if just one defendant requested and received a set, it shall pay plaintiffs that sum, whereas if two defendants did, then they shall pay $4,500 each, and so on. I conclude that a defendants' presence during one or more days of the Phase I review, which was at the cost of each defendant who chose to be present, does not merit contribution by that defendant to the amounts plaintiffs paid to reimburse Duke.

### 2. Phases II and III

The documents produced in the later phases present a different issue. I had been in communication with the parties beginning in April 2011 concerning plaintiffs' request to broaden the scope of Duke's production, in particular to not limit the search to defendants and products named in the complaints. No defendants joined in the request for this broader search of the Duke documents. Following a conference on June 1, 2011, Duke re-produced the boxes that had already been searched for purposes of a broader search, and also produced another 1,012 boxes for review (Phase II) and conducted its own privilege review of the latter group of boxes (Phase III). In my prior order, I directed plaintiffs to reimburse Duke in the amount of $116,989.06 for the production in Phases II and III. Plaintiff seeks contribution from "relevant" defendants to this amount, without

identifying or itemizing the amounts they believe each defendant owes and why. Plaintiffs also seeks contribution by defendants to the cost of scanning the Duke documents, which is expected to total $99,000.

Plaintiffs argue that defendants were aware from the outset of their request for a sharing arrangement, and that defendants have received the benefit of plaintiffs' efforts without the cost. Plaintiffs also argue that the parties reached a cost-sharing arrangement with respect to a production in a different case by a different non party, which should be used as a model to cost sharing in the Duke production. Finally, plaintiffs argue that defendants' failure to produce their own responsive documents has led to the current dilemma, requiring plaintiffs to supply specific product information which plaintiffs have only been able to do by virtue of documents discovered at Duke.

Every defendant who has filed a response to the motion asserts that it did not join in plaintiffs' request for a broader search of the Duke documents, and did not request copies of any of the documents that plaintiffs obtained in this search. Neither Duke's report nor plaintiffs' memorandum refutes defendants' assertions in this regard. Rather, certain defendants retained their own copy services to copy documents that they identified, and others chose not to obtain any documents, either taking the position that plaintiff would be obligated under Rule 26 to provide any documents they found that would be used against them, or simply showing no interest in the production. Defendants also argue that plaintiffs went into the Duke production with the full knowledge that

6

defendants did not agree to share costs, particularly with respect to the very broad discovery plaintiffs sought, and that there were specific reasons for agreeing to share costs in the other non-party production that were not present in the Duke production. Additionally, defendants argue at length that plaintiffs' true purpose in seeking discovery from Duke was not to find evidence relevant to the claims in these cases, but to find new suits and new claims to pursue, an effort they would rather not fund.

Initially, there is no basis for me to conclude that any defendants would have undertaken a broader review of the Duke documents. No defendant joined in the request for the broader search, and all indications are that defendants' involvement would have ended after Phase I if plaintiffs had not pursued further production. Therefore, if not for plaintiffs' request for a broader search, Duke would not have incurred the costs of making the documents available and reviewing them for privilege in Phases II and III. It was plaintiffs' request alone that led to the costs incurred in the latter phases of the Duke production. Those costs included costs to Duke (some of which I assigned to plaintiffs), costs to plaintiffs, and costs to those defendants who chose to participate. There is also no basis to conclude that any defendants requested or received Duke documents from plaintiffs during the latter phases of the production. Therefore, the door I left open in my earlier order – the sharing of costs by defendants who requested and received Duke documents from plaintiffs – has not been opened.

I reject plaintiffs' argument that the other non-party production should be used as a model for cost sharing here. I will not impose an agreement among counsel in one case on a dispute among counsel in another case. I also reject plaintiffs' implication that defendants somehow lured them into undertaking the costs of the production with the false hope of sharing in those costs. I have not been presented with any evidence that any defendant agreed to participate in the costs of Duke's Phase II/III production. I also cannot rely on plaintiffs' argument that they pursued the broader Duke production only due to the discovery violations of the defendants. Where called upon to do so I have ruled on motions to compel, and no connection has been drawn between any alleged discovery violation and plaintiffs' choice to seek the documents from Duke. Simply put, the Phase II and III productions were part of plaintiffs' investigation, and not part of a joint investigation by plaintiffs and defendants.

The remaining issue to address is whether the participation in the document review at Duke of certain defendants during the Phase II/III production supports some measure of cost sharing by those defendants. I conclude that it does not. Each defendant who participated did so at its own cost, and any defendant who requested copies of documents retained their own service for such purpose, and did not request or receive any documents from plaintiffs.

Finally, to the extent plaintiffs through their own search are in possession of documents that are relevant within the meaning of Rule 26 and fall within the discovery

requests issued in these cases, plaintiffs must supplement their discovery responses and document production in the normal course, as must any defendants who obtained documents from Duke.

### 3. United Conveyor's Request to Serve Discovery

United Conveyor seeks permission to serve plaintiffs with supplemental discovery requests, pointing out that plaintiffs have never identified how many documents they requested, flagged and scanned in the Duke production that were related to entities that are not parties to these cases.  This request is related to the defense argument referenced above that plaintiffs' true motive in the Duke production was to find documents to support additional claims in these and future cases.  In light of my conclusion that it was plaintiffs who necessitated Duke's Phase II and Phase III productions and that defendants are not required to share in the cost of the production, I will also deny this motion without the necessity of a response from plaintiffs.

An appropriate Order follows.